UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-04110-SLD-JAG |
| ) | |
| KELLOGG BROWN & ROOT SERVICES, ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

In this case, the United States claims that a defense contractor and its subcontractor inflated the costs of providing living containers to house American troops serving in Iraq. Defendant Kellogg Brown & Root Services, Inc. ("KBR"),[1] has moved for transfer of venue to the Eastern District of Virginia ("EDVA"), arguing that the interest of justice and convenience of material witnesses support transfer. Because the pleadings and accompanying affidavits have fully presented the relevant facts and issues, the Court DENIES KBR's request for a hearing on this motion, ECF No. 17 at 2. For the reasons set forth below, the Court DENIES KBR's Motion to Transfer Venue, ECF No. 17.

## BACKGROUND

On November 20, 2012, the United States filed a complaint against KBR, Overseas Administration Services, Ltd., and KBR's subcontractor First Kuwaiti Trading Company in its various incarnations ("First Kuwaiti"), for inflating the costs of providing living containers to house American troops serving in Iraq. ECF No. 1. The seven-count complaint alleges

---

[1] Specifically, the Government has named as defendants Kellogg Brown & Root Services, Inc., and its successor Kellogg Brown & Root LLC, who will be collectively referred to with the appellation, "KBR."

1

violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–31, and the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101–09, and breach of contract. The Court has subject matter jurisdiction over these claims under 18 U.S.C. § 1345 because the United States instituted this civil action.[2]

On December 14, 2001, the U.S. Army awarded an umbrella contract under its Logistics Civil Augmentation Program III ("LOGCAP III") to KBR for the provision of support services in the Iraqi military theater. ECF No. 3 at 2–4. In August 2003, Bed Down Mission, a program that replaced tents with living containers, was added to LOGCAP III. *Id*. at 5. KBR awarded to First Kuwaiti the subcontract to provide, deliver, and install living containers at Camp Anaconda in Iraq. *Id.* First Kuwaiti invoiced KBR for its services, and KBR in turn sought reimbursement from the United States for the costs of paying the subcontractor plus overhead, general expenses, and a one percent fee. *Id.* at 4. The living containers were to be delivered by December 15, 2003, but actual delivery was postponed due to causes contested by the parties. The complaint alleges that First Kuwaiti inflated the costs associated with delay, and KBR knew or had reason to know this, but still paid First Kuwaiti and then sought reimbursement from the U.S. for the allegedly inflated costs. *See* ECF No. 3.

Starting in 2005, the Government began questioning KBR's reported costs and, as a result, only partially reimbursed KBR's claims. ECF No. 18 at 1. KBR sought reimbursement for some $50 million to which it claimed it was entitled, filing a contract claim with the Armed Services Board of Contract Appeals ("ASBCA"). After the Government instituted the instant suit, the ASBCA proceeding was dismissed without prejudice upon the Government's motion

---

[2] The CDA provides for "any claim involving fraud" to be brought directly in federal district court, bypassing the usual contract dispute resolution process which requires claims first to be presented to an agency contracting officer. 41 U.S.C. § 7103(c)(1); *see Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540, 545 (Fed. Cir. 1988). As explained, the Government's claim involves fraud in this case.

2

while this Court adjudicates the fraud claims, over which the ASBCA has no jurisdiction. *See* ECF No. 18, Ex. 1 at 3. As of the ASBCA dismissal on January 29, 2013, KBR has three years to re-file its claim before that board. *Id.* at 4.

The Government selected the Central District of Illinois ("CDIL") as the forum for this case because LOGCAP III was officially administered out of the Rock Island Arsenal in Rock Island, Illinois, by U.S. Army Contracting Command. ECF No. 22 at 6–7. Further, KBR maintains a small space on the Rock Island Arsenal that it claims is not a business office but merely a post for facilitating communications between KBR and Army Sustainment Command. ECF No. 27 at 1–2. KBR claims that the location of material events and many potential witnesses in or near the EDVA favors transfer to that district, which is also home to the Defense Department's Pentagon headquarters. ECF No. 17 at 1. KBR also argues that the EDVA's so-called "rocket docket" would ensure KBR has time to re-file its ASBCA within the three-year window. *See* ECF No. 18 at 1–2.

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party seeking transfer carries the burden of "establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (citations omitted). The convenience of the new forum must be manifest. "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626

F.3d 973, 978 (7th Cir. 2010). The district court ultimately should decide motions to transfer based on a "'case-by-case consideration of convenience and fairness.'" *See id.* at 977 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988)). Because neither party disputes the propriety of the transferee forum, the Court will evaluate the factors of convenience and the interest of justice.

## II. Convenience

In performing the convenience evaluation, courts generally consider: (1) the availability of and access to witnesses, (2) each party's access to and distance from resources in each forum, (3) the location of material events, and (4) relative ease of access to sources of proof. *Research Automation, Inc.*, 626 F.3d at 978. Additionally, the plaintiff's choice of forum should generally prevail "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003).

### A. Convenience of Witnesses

KBR argues that few if any key witnesses are located near Rock Island in the Central District of Illinois ("CDIL"), but "several" reside in or near the EDVA. ECF No. 18 at 11. KBR claims likely witnesses will be the same in this case as in the ASBCA proceeding, as both cases share the same operative facts. *Id.* The likely witnesses located near the EDVA that KBR identifies include one Government employee—Lt. Col. Damon Walsh—and six former KBR employees: Tom Quigley, Ted Needham, Todd Bishop, Bill Walter, Erin Wilson and Homer Winter. *Id.* at 11–12.

According to the Government, most of the nonparty witnesses it intends to call, also overlapping with the ASBCA proceeding, are distributed around the country with no critical mass located in or near either the CDIL or the EDVA. *See* ECF No. 22 at 9. Further, it claims

4

that Mr. Needham is currently working out of Atlanta, Georgia, and that, at least as of the start of 2013, Ms. Wilson and Mr. Winter were on work assignment in Toronto, Canada. *Id.* at 11. The Government also anticipates calling some of KBR's Houston employees as witnesses. *Id.*

Integrating the likely-witness lists identified by each party, the Court finds that there are simply not enough likely witnesses for whom the EDVA is unquestionably more convenient to justify transferring venue to the EDVA as "clearly more convenient" for the potential witnesses. *See Coffey*, 796 F.2d at 219–20.

### B. Convenience of Parties

As for convenience of the parties, KBR argues that this factor favors the EDVA as KBR has offices in the EDVA and both parties' counsel are located nearby in Washington, D.C. ECF No. 18 at 13. But, the convenience of parties' counsel should "rarely, if ever" influence a transfer determination, or else parties could easily co-opt a district court's discretion over venue simply by retaining counsel in the desired forum. *U.S. ex rel. Chillcott v. KBR, Inc.*, No. 09-cv-04018-JBM-JAG, slip op. at 5 (C.D. Ill. May 17, 2013) (citation and internal quotation marks omitted). Further, the presence of KBR offices in the EDVA does not carry conclusive weight, as KBR—whose corporate headquarters is in Texas, ECF No. 20 at 2—also maintains a presence at Rock Island, ECF No. 27 at 1–2.

### C. Location of Material Events

KBR argues that the EDVA is the location of material events. Specifically, it argues, many of the Government's claims concern allegations of misrepresentations made by KBR based on information gathered and analyzed by KBR employees at KBR's Government Compliance Department in the EDVA. ECF No. 18 at 14. Also, KBR employees connected to these

5

representations, such as Mr. Bishop and Mr. Needham, "often worked in KBR's Arlington office." *Id.*

The Government argues that Rock Island is the "center of gravity" for this suit. According to Army Criminal Investigation Command Special Agent Jason Allmon, affiant for the Government, the Army employees responsible for entering into and administering the contract were primarily located in Army Sustainment Command and the Army's Program Management Office, both located at the Rock Island Arsenal,[3] and the Defense Management Contracting Agency in Houston, Texas. ECF No. 23 at 3. The Government maintains that the significant Government-KBR employee interaction thus occurred in Rock Island and Houston, and not at the Pentagon in the EDVA. ECF No. 22 at 7–8. And, regardless of where KBR employees gathered information, at least some of their responses to and interactions with Army officials concerning LOGCAP III occurred in Houston. *See* ECF No. 22, Ex. 2.

While KBR's Virginia office appears to be the situs of some material events at issue in this case, material events also appear to have occurred in Rock Island and Houston. The fact that a clear majority of material events did not occur in the EDVA weighs against transferring this case there.

### D. Access to Sources of Proof

KBR does not address this factor. The Government only addresses access to proof in passing, noting that Government witnesses and documents, including some formerly housed in Virginia, are located at Rock Island. ECF No. 22 at 12–13. Courts often accord this factor little weight, as "technological advances have made it simpler to transmit documentary evidence." *Caterpillar, Inc., v. ESCO Corp.*, 909 F. Supp. 2d 1026, 1031 (C.D. Ill. 2012) (citations omitted).

---

[3] According to Allmon, the Program Management Office relocated from Arlington, Virginia, to Rock Island sometime in 2009 or 2010 to be closer to the Sustainment Command. ECF No. 23 at 3.

With witnesses considered separately in this analysis, the remaining likely sources of proof are documents concerning transactions and communications between First Kuwaiti, KBR, and the Government.  Thus, while this Court will not ignore this factor entirely, *see id.* at 1032 n.4, KBR has not established that the parties' access to documentary proof is sufficiently superior in the EDVA to warrant transfer from the CDIL.

### E.  Plaintiff's Choice of Forum

While deference is traditionally accorded to a plaintiff's choice of forum, *In re Nat'l Presto Indus., Inc.,* 347 F.3d at 664, KBR argues that the Government as plaintiff does not merit such deference.  ECF No. 18 at 10.  At least one court views the Federal Government's omnipresence as reason to discount its selection of any particular judicial district.  *U.S. v. Nature's Farm Prods., Inc.*, No. 00 Civ. 6593 (SHS), 2004 WL 1077968, at *6 (S.D.N.Y. May 13, 2004).  Other district courts grant weight to the Government's forum preference based on the presence of a meaningful relationship between the forum and the claims or the parties.  *See, e.g., U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 47 (D.D.C. 2011); *U.S. v. Gwinn*, No. 06-cv-00267, 2008 WL 867927, at *18 (S.D.W. Va. Mar. 31, 2008).  The Court finds the latter logic convincing.  The CDIL is related to this litigation's operative facts, as day-to-day LOGCAP III administration and management was concentrated at the Rock Island Arsenal, according to Government personnel.   ECF No. 23 at 2–3.   Therefore, the Government's choice to litigate in the CDIL places an extra thumb on the scale in favor of denying transfer.

In sum, (1) without a critical mass of material events or likely witnesses located in either the EDVA or the CDIL, (2) with arguments based on the parties' convenience and access to proof providing little if any reason to transfer to the EDVA, and (3) with the Government's

7

forum choice warranting at least some deference due to its connection to this case's operative facts, the Court finds that trying this case in the EDVA would not be "clearly more convenient." *See Coffey*, 796 F.2d at 219–20.

### III.   Interest of Justice

Under the interest of justice element, the factors courts consider are: (1) docket congestion and likely speed to trial in the transferee versus transferor districts, (2) each court's familiarity with the relative law, (3) the desirability of resolving controversies in the respective locales, and (4) the relationship of the respective communities to the controversy. *Research Automation, Inc.*, 626 F.3d at 977 (citations omitted).

The third and fourth factors have no bearing on this case. Presumably, every community in the United States has a comparable interest in ensuring that the federal government is not defrauded. *Chillcott*, No. 4:09-cv-04018-JBM-JAG, slip op. at 7. The second factor—familiarity with the law at issue—does not weigh in favor of transfer. All the claims in this case arise under federal law.[4] All federal courts are presumably competent in interpreting federal law. *See id.*; *Nature's Farms Prods., Inc.*, 2004 WL 1077968, at *6 ("[T]he False Claims Act is a federal statute and 'any district court may handle [a federal case] with equal skill.'" (quoting *Bristol-Meyers Squibb Co. v. Andrx Pharms., LLC*, No. 03 Civ. 2503 (SHS), 2003 WL 22888804, at * 4 (S.D.N.Y. Dec. 5, 2003))).

Regarding the first factor, KBR argues that likely speed to trial in the EDVA's so-called "rocket docket" weighs heavily in its favor. Citing Federal Court Management Statistics ("FCMS"), KBR argues that median case-resolution times are significantly shorter in the EDVA

---

[4] The Amended Complaint, ECF No. 3, states that the seventh claim is "at common law" for breach of contract, but specifies neither state nor federal law. ECF No. 3 at 1–2. However, the Government later clarifies this ambiguity in its Opposition to Defendants' Motion to Transfer Venue, when it asserts that this action is "based entirely on federal law." ECF No. 22 at 14. The Court thus views the Government's seventh claim as sounding in federal common law.

than in the CDIL.  ECF No. 18 at 8–9.  Courts use the FCMS to gauge case-resolution speed by considering both median times from filing to disposition and from filing to trial.  *Johnson v. United Airlines, Inc.*, No. 12 C 5842, 2013 WL 323404, at *7 (N.D. Ill. Jan. 25, 2013) (citations omitted); *Nero v. American Family Mut. Ins. Co.*, No. 11 C 1072, 2011 WL 2938138, at *4 (N.D. Ill. July 19, 2011); *Powell v. Sparrow Hosp.*, No. 09 C 3239, 2010 WL 582667, at *5 (N.D. Ill. Feb. 10, 2010) (citation omitted).

For the 12-month period ending September 30, 2012—the most recent period for which FCMS statistics are available—the median time from filing to disposition for civil cases in the EDVA was 5.2 months.  Administrative Office of the U.S. Courts, Federal Court Management Statistics, Sept. 2012, (last visited Oct. 2, 2013) *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx.  The median time from filing to trial was 11 months.[5]  *Id.*  By contrast, the median time to disposition for civil cases in the CDIL was 9.6 months for the 12 months ending September 30, 2012.  *Id.*  The median time from filing to trial was 38.6 months.  *Id.*

If last year's statistics are any guide, time to disposition could be more than doubled, and time to trial more than tripled, by adjudicating this case in the CDIL.  Somewhat mitigating the timing differential is the fact that, despite the speed of resolution, the EDVA and the CDIL still have an identical percentage of cases that are over three years old: 3.6 percent.[6]  *Id.*

---

[5] Median times to disposition are shorter than those to trial because the former category includes all terminated civil cases, whether through trial or other method.  Time to disposition statistics only exclude cases involving land condemnation, prisoner petitions, deportation reviews, recovery of overpayments, and enforcements of judgments.  *See* Administrative Office of U.S. Courts, Federal Court Management Statistics, Explanation of Selected Terms (last visited Oct. 2, 2013), *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2012/explanation-of-selected-terms-september-2012.pdf.

[6] The Government notes that that the EDVA saw more than twice as many cases filed in the period ending Sept. 30, 2013, as CDIL (5,133 versus 1,962) and almost twice as many cases pending (3,353 versus 1,854).  ECF No. 22 at 13.  These statistics do not mitigate the speed-to-trial differential between the districts because these numbers are not significantly different from the filing and pending rates of these districts in the immediately preceding years, which presumably influenced the time-to-trial and time-to-disposition rates registered in the period ending Sept. 30, 2012.

Nevertheless, particularly considering KBR's time constraints in re-filing its ASBCA claim, the significant chance of a quicker resolution in the EDVA weighs in favor of transfer. *See Johnson*, 2013 WL 323404, at *7.

Speed to trial, however, is not dispositive, but merely one factor in determining the interest of justice. *Chillcott*, No. 09-cv-04018-JBM-JAG, slip op. at 7 (citing *Coffey*, 796 F.2d at 219). As the EDVA itself has noted, if the speed factor was singly determinative of venue, popular forums would quickly lose that characteristic as they became bogged down with cases. *See Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) ("The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." (citation and internal quotation marks omitted)).

As mentioned, the other three factors in the interest of justice analysis do not weigh in favor of transfer. Additionally, *Chillcott*—a similar FCA suit against KBR concerning LOGCAP III—is currently being litigated in this district. The court in *Chillcott*, in denying a KBR motion to change venue to the EDVA, noted that potential overlap in discovery or testimony regarding solicitation and administration of the KBR contract suggested that judicial efficiency would be served by resolving both FCA cases in the CDIL, which has adjudicated other LOGCAP III cases as well. *Chillcott*, No. 09-cv-04018-JBM-JAG, slip op. at 7; *see Coffey*, 796 F.2d at 220 ("The 'interest of justice' analysis relates to the efficient functioning of the courts …."). In sum, while a likely speedy resolution supports litigating in the EDVA, the overall interest of justice analysis does not point strongly toward transfer.

---

Administrative Office of the U.S. Courts, Federal Court Management Statistics, Sept. 2012, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2012.aspx.  In other words, having a similarly loaded docket has not prevented EDVA from speedy case disposition in recent years.

## CONCLUSION

Because transferring this case to the EDVA is neither clearly more convenient for likely witnesses and the parties, nor compelled by the interest of justice, the Court finds that the equities contemplated in 28 U.S.C. § 1404(a) do not support transferring venue. Accordingly, Defendant KBR's Motion to Transfer Venue, ECF No. 17, is DENIED.

Entered this 4th day of November, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
