IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>KELLOGG BROWN & ROOT<br>SERVICES, INC., *et al.*,<br>    Defendant. | Case No. 4:12-cv-04110-SLD-JEH |

**Report and Recommendation**

Before the Court is the Government's motion for an injunction under the All Writs Act, 28 U.S.C. § 1651. (D. 149)[1], asking this Court to stay an administrative proceeding pending before the Armed Services Board of Contract Appeals ("Board"). The Defendants, Kellogg Brown & Root Services, Inc., Kellogg Brown & Root, LLC, and Overseas Administrative Services, Ltd. (collectively, "KBR"), filed their response thereto (D. 154), presiding judge Sara L. Darrow referred the matter to the undersigned, and the motion is now ripe. For the reasons stated, *infra*, it is recommended that the motion be DENIED.

**I**
**A**

The Court assumes familiarity with the general facts in this case and, therefore, recites only those facts related directly to the motion presently before the Court. The Government alleges that KBR violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, violated the anti-fraud provisions of the Contract Disputes Act ("CDA"), 41 U.S.C. § 7103(c)(2), and breached its contract with the

---

[1] Citations to the Docket in this action are abbreviated as "D. __."

Army. Specifically, in December of 2001, the United States Army entered into a contract with KBR for logistical support in the Iraqi military theater, the contract being the Logistics Civil Augmentation Program III or "LOGCAP III." In 2004, KBR entered into a subcontract with First Kuwaiti Trading Company ("First Kuwaiti"), which required First Kuwaiti to deliver and install 4,083 living trailers at two United States military bases in Iraq in exchange for approximately $150 million. However, KBR ended up paying First Kuwaiti approximately $50 million over the subcontract price for costs purportedly incurred as a result of Government-caused delay. KBR then sought reimbursement from the Government.

Various governmental layers of review denied, approved, and/or modified KBR's request for reimbursement, culminating in KBR's filing of an appeal to the Board in August of 2011. The Government then filed its Complaint in this case on November 19, 2012, and, four days later, moved to suspend or dismiss the Board proceeding. On February 20, 2013, the Board initially granted the Government's motion, dismissed the proceeding without prejudice, and gave KBR permission to reinstate the materfor up to three years from the date of dismissal.

Discovery in the case thereafter dragged on due primarily to KBR's discovery in March of 2013 of a classified data spill, which precipitated the sequestration of data needed for discovery. Various government agencies then imposed a Byzantine set of requirements and procedures before data processing for discovery purposes could begin again, nearly three years later.

On February 17, 2016, with the 3-year window for reinstating its action before the Board closing, KBR moved the Board to reinstate its contract appeal. KBR noted the delays caused by the problems with data sequestration, as well as chided this Court for taking too long to rule on pending motions and moving the case along too slowly. (D. 149-4 at ECF pp. 3-9). Two days later, without giving the

Government an opportunity to respond to the motion, the Board reinstated the contract action. The Government again moved the Board to suspend or dismiss the action, but on June 25, 2016, the Board denied the Government's motion. The Board also denied the Government's motion to reconsider that denial.

With both this case and the Board proceeding active again, discovery finally moved forward on two tracks, concurrently, pursuant to an agreement between the parties to utilize discovery in each action for the other. The Board, however, has set the matter before it for trial on September 18, 2017, well in advance of the March 26, 2018, trial date in this matter. Fearing complications from the Board adjudicating the contract claims before this Court hears the merits in this case, and having failed to convince the Board to stay its own proceeding, the Government now turns to this Court for the relief it cannot get from the Board—a suspension of the Board proceeding until this case is concluded.

### B

The Government argues that this Court should issue an injunction, pursuant to the All Writs Act, enjoining the administrative proceeding before the Board because that proceeding undermines this Court's exclusive jurisdiction over this fraud and contract case. The "fraud facts" and "contract facts" in this case and the Board proceeding are, according to the government, "inseparably intertwined," such that the Board's jurisdiction under the CDA no longer governs. (D. 149-1 at ECF p. 11). Because the Board cannot make findings related to fraud according to *Martin J. Simko Construction, Inc. v. United States*, 852 F.2d 540, 545 (Fed. Cir. 1988), and the Government contends that KBR's contract claims are not allowable because they are fraudulent, this Court should enjoin the Board proceeding, resolve the fraud claims in this case, and then allow the Board proceeding to resume with the benefit of the adjudication of the fraud claims. In this scenario, the Board would not need to "make factual determinations underlying the fraud,"

but could rely on the binding effect of any fraud findings made by this Court—something which, according to the Government, *Laguna Construction Co. v. Carter*, 828 F.3d 1364 (Fed. Cir. 2016) would allow. To allow the Board proceeding to finish before this case risks the Board finding KBR's claim for reimbursement reasonable under its limited fact finding authority and this Court finding the same claim fraudulent under its broader fact finding authority.

KBR responds that this Court lacks the authority to enjoin the Board, noting that the Government fails to cite a single case where a district court enjoined the Board from proceeding with an appeal. Moreover, the All Writs Act, at best, would allow the issuance of a writ by a court which has some form of jurisdiction over the entity to which it issues the writ—something this Court does not possess over the Board; only the Federal Circuit enjoys jurisdiction over the Board and could enjoin its proceedings—a court from which the Government could have sought a writ in this case but did not. And, even assuming this Court has authority to enjoin the Board, an injunction is not warranted in this case. Finally, the mere possibility of inconsistent outcomes between the Board and this Court is no reason for this Court to "jump the queue by enjoining the suit that is likely to reach decision first." (D. 154 at ECF p. 15, *quoting Adkins v. Neslte Purina PetCare Co.*, 779 F.3d 481, 484-85 (7th Cir. 2018)).

## II

The All Writs Act, 28 U.S.C. § 1651, states in relevant part:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

This Act is "a residual source of authority to issue writs not otherwise covered by statute" when "extraordinary remedies" are needed. *Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 42 (1985). The parties spill much ink

on whether this Court has authority under the Act to enjoin the Board—something no similarly situated district court has ever done. This fact alone would and should give any Court pause before granting the Government the relief it seeks.

But even assuming this Court has the authority to enjoin the Board, the plain language of the Act makes clear that any writ this Court would issue must be "in aid of [its] respective jurisdiction." 28 U.S.C. § 1651(a). "[I]t is not enough that the requested injunction is *related* to that jurisdiction, but it must be '*necessary* in aid of that jurisdiction.'" *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970), *qoting* 28 U.S.C. § 1651(a) (interpreting identical language in the Anti-Injunction Act)(emphasis added). The Supreme Court has concluded that this "admittedly broad" language "implies something similar to the concept of injunctions to 'protect or effectuate' judgments." *Atlantic Coast Line R. Co.*, 398 U.S. at 295, *quoting* 28 U.S.C. § 2283.

In *Atlantic Coast Line R. Co.*, the Supreme Court concluded that a federal district court improperly enjoined concurrent, state court proceedings based upon the same operative facts as the federal case. Noting that 28 U.S.C. § 2283 prohibits a federal court from staying proceedings in state court except when, among other things, "necessary in aid of its jurisdiction," the Court interpreted this language to imply "that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co.*, 398 U.S. at 295-96. The Court found no such impairment present, commenting that the federal court had jurisdiction based on federal law and the state court also had jurisdiction over the complaint based on state law; both courts had concurrent jurisdiction over the case and neither was free to prevent either party from simultaneously pursuing claims in both courts. *Atlantic Coast Line R. Co.*, 398 U.S. at 295. Analogously here, nothing about the Board

proceeding threatens to impair this Court's jurisdiction, and no injunction need issue in aid of its jurisdiction.

Admittedly, there is overlap between the two proceedings at issue. Discovery has been conducted in both cases concurrently and both proceedings involve the approximately $50 million in reimbursement KBR sought from the Army. However, this overlap does not mean this Court's jurisdiction is somehow impaired. As the Government argues, the Board may not make factual findings concerning fraudulent conduct when deciding whether KBR's request for reimbursement is reasonable, but fraud is a central question in *this* case. Whether or not the Board ultimately finds in favor of either party in the proceeding before it is of little moment to this Court's *jurisdiction*, although its findings may impact *issues* in this case.

To illustrate the point with an oversimplification, consider the possible outcomes between the two cases. *Scenario 1*: The Board finds the costs reasonable and no fraud is found in this case. No problem or inconsistencies here; KBR gets its reimbursement. *Scenario 2*: The Board finds the costs unreasonable and no fraud is found in this case. No problem here either. There is nothing inconsistent about the absence of fraud and the costs being unreasonable for other reasons. KBR does not get its reimbursement. *Scenario 3*: The Board finds the costs unreasonable and there is fraud found in this case. No inconsistency or problem here. KBR does not get reimbursed, and the government gets additional remedies due to the fraud. *Scenario 4*: The Board finds the costs reasonable and fraud is found in this case.

Scenario 4 is the only combination of outcomes that has the potential for creating complications in this case, but those potential complications still do not impair this Court's jurisdiction necessitating the issuance of an injunction. Courts are well-equipped with familiar principles of law to address potentially conflicting

6

judgments from different adjudicatory bodies such that reaching for an extraordinary remedy on a 25% chance that a problem might occur is unnecessary.

Moreover, in the unlikely event that a genuine conflict arises between the decision of the Board and this Court on the merits of this case, after this possibility has become a reality is the best time for this Court to address how best to address that outcome. At that time, the Court will know the precise contours of any potential conflict—contours that cannot be accurately predicted now when nothing has been decided on the merits in either case. Likewise, as KBR argues, a decision by the Board could have unforeseen benefits for the Court and the parties to this litigation. The Board has special expertise in federal procurement law, *see Fruin-Colnon Corp. v. United States*, 912 F.2d 1426, 1429 (Fed. Cir. 1990), and a decision rendered by it might provide clarity on at least some of the issues in this case, maybe even giving the parties additional insight into the risks of litigating this case through conclusion as opposed to reaching a settlement.

In sum, even assuming that this Court has the authority to enjoin the Board, an injunction is not necessary in aid of this Court's jurisdiction. There is no more than a 25% chance of a conflict between the Board's decision and a decision by this Court; the better time to address any potential conflict is after it has arisen, when the Court knows the precise nature of any conflict; the Court has familiar and well-established legal principles for dealing with conflicts after they have arisen; and a decision by the Board has the potential of benefitting this litigation, rather than complicating it. For all these reasons, it is recommended that the motion be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

*Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on April 28, 2017

s/Jonathan E. Hawley
U.S. Magistrate Judge